**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. 09-88 (MLC) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JOSEPH BAKER, JR., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**COOPER, District Judge**

Defendant, Joseph Baker, Jr., pro se, moves for resentencing in this closed criminal case.  He argues that he is entitled to retroactive application of the Fair Sentencing Act reduction in the mandatory minimum term for distribution of certain quantities of crack cocaine under 21 U.S.C. § 841 based upon his plea agreement. Defendant pleaded guilty and was sentenced to a mandatory term of 10 years imprisonment, prior to enactment of the Fair Sentencing Act on August 3, 2010.

The Fair Sentencing Act, where a defendant was sentenced to a mandatory minimum term of imprisonment before it was enacted, does not provide this Court with authority to resentence that defendant below the mandatory minimum that was in effect at the time of sentencing.  United States v. Reevey, 631 F.3d 110, 111 (3d Cir. 2010). Defendant does not specify whether his motion is brought under 18 U.S.C. § 3582(c), or 28 U.S.C. § 2255, or some other purported rule of law or procedure.  However, the relief requested must be denied in any event, for the reasons stated here.

## BACKGROUND

A one-count indictment, filed on February 12, 2009, charged that on or about April 2, 2008, defendant did knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Docket entry no. ("dkt.") 16.)  At that time, the offense carried a mandatory minimum term of imprisonment of 10 years.  On November 4, 2009, defendant appeared in this Court and entered a plea of guilty pursuant to a written plea agreement.  (Plea agreement, dkt. 28; transcript of plea hearing, dkt. 37.)

The parties' stipulations in the plea agreement included the following provision:

> Notwithstanding the provisions of paragraphs #1 through #9 above [pertaining to crack cocaine quantity and guidelines calculations, including 10-year mandatory minimum], in the event that the guideline provisions and/or mandatory minimum sentencing provisions of Title 21, United States Code, Section 841(b)(1)(A) that apply to cocaine base (crack cocaine) distribution offenses are amended subsequent to the entry of this plea agreement, the defendant reserves the right to petition the District Court for a re-sentencing hearing.  The government reserves the right to take whatever position it deems appropriate in response to any such petition filed with the Court and further, the government specifically reserves the right to present any evidence it has of additional quantities of cocaine and cocaine base distributed by the defendant prior to the date of the original sentencing hearing as relevant conduct, pursuant to the provisions of Guideline Section 1B1.3, without regard to the drug weight stipulation set forth in paragraph #3 above.

(Dkt. 28 at 6 (bracketed material added).)

This Court discussed all portions of the plea agreement at the plea hearing on the record in open court, with the defendant and counsel for both parties, including this

provision, as described <u>infra</u>.  Following that discussion, the Court accepted defendant's guilty plea to the charged offense, finding that it was knowing and voluntary and supported by an independent basis in fact, containing each of the elements of the offense as charged.  (Dkt. 37 at 52-53.)

Sentencing was conducted on May 14, 2010, and the Judgment of Conviction was entered on May 28, 2010.  (Dkt. 34 at 1.)  The sentence was a mandatory minimum of 120 months, with a mandatory 5-year term of supervised release and no fine.  (<u>Id.</u> at 2,3; <u>see also</u> sentencing hearing transcript, dkt. 38 at 7-9, 21-23.)  The calculations on which the sentence was based are stated in the margin.[1]  There was no appeal, nor any post-conviction motion filed by defendant under 28 U.S.C. § 2255.  (Dkt. (passim).)

The Fair Sentencing Act of 2010, Pub.L.No. 111-220, 124 Stat. 2372 (2010) ("Fair Sentencing Act" or "FSA"), was enacted on August 3, 2010.  <u>Reevey</u>, 631 F.3d at 113-14. That was more than two months after defendant was sentenced.

The FSA raised the minimum amount of cocaine base necessary to trigger the 10-year mandatory minimum prison term from 50 grams to 280 grams, and amended the corresponding amount necessary to trigger the 5-year mandatory minimum to 28 grams.

---

[1]  The Court at the sentencing hearing used the then-current edition of the USSG Guidelines Manual, effective November 1, 2009.  The Court calculated the total offense level to be 27, with a base offense level of 30 based upon the parties' stipulated weight of more than 50 but less than 150 grams of cocaine base, and 3 levels of downward adjustment for acceptance of responsibility.  The criminal history category was III, based upon 6 criminal history points.  The resulting advisory guideline range for imprisonment would have been 87 to 108 months on the guideline sentencing table, but because of the mandatory minimum the guideline range became exactly 120 months.  (Dkt. 38 at 6-9.)

FSA §§ 2(a)(1) and (2).  Thus, if the FSA were applicable to defendant's case, where he pleaded guilty to an offense involving 50 grams or more of cocaine base, the applicable mandatory minimum would be 5 years rather than 10 years.

Defendant seeks to be resentenced under that lower 5-year mandatory minimum (and the subsequently lowered guidelines provisions), and to have a sentencing hearing to determine what his advisory guideline range and ultimate sentence should be.  He relies upon the provision of his plea agreement quoted above, and the related statements of counsel and the Court at his plea hearing in 2009.  (Dkt. 42 at 1-7.)  He claims to be entitled to specific performance of the plea agreement for that purpose.  (Id. at 6.)  The government opposes the motion, arguing that resentencing of defendant is foreclosed by Reevey and subsequent case law, and the cited provision of his plea agreement does not change that result.  (Dkt. 48 at 1-7.)

This motion was filed on January 25, 2013.  (Dkt. 42.)  The matter has now been fully briefed by both parties, and the Court has reviewed the motion papers and the underlying criminal file.[2]

---

[2]  Defendant submitted a supplemental motion and brief filed on June 26, 2013.  (Dkt. 46.)  The government responded with a letter brief filed nunc pro tunc on March 6, 2014.  (Dkt. 48.)  Defendant's reply brief was filed on April 15, 2014.  (Dkt. 50.)  The underlying criminal file includes relevant documents including the Indictment filed on February 12, 2009 (dkt. 16); plea agreement filed on November 4, 2009 (dkt. 28); transcript of plea hearing conducted on November 4, 2009 (dkt. 37); transcript of sentencing hearing conducted on May 14, 2010 (dkt. 38); and Judgment filed on May 28, 2010 (dkt. 34).

## DISCUSSION[3]

The Court of Appeals for the Third Circuit held in <u>Reevey</u> that the Fair Sentencing

Act may not be applied retroactively to authorize the District Court to impose a sentence

below the prescribed mandatory minimum prison term in effect at the time of sentencing,

where defendant was sentenced before the FSA was enacted on August 3, 2010, except in

limited circumstances not presented in that case.  631 F.3d at 111-13.[4]

Defendants in <u>Reevey</u> pleaded guilty to offenses involving cocaine base under 21

U.S.C. § 841(b)(1)(B), and were sentenced to the then-applicable mandatory minimum of

5 years imprisonment, prior to enactment of the FSA.  They appealed, and the FSA was

enacted while their appeals were pending.  The effect for them, if the FSA could have

been applied retroactively to their cases, would have been to eliminate any mandatory

minimum.  <u>Id.</u> at 111-14.[5]  They argued that the FSA should be applied retroactively to

---

[3] This Court has jurisdiction in a federal criminal action under 18 U.S.C. § 3231.

[4] The <u>Reevey</u> Court explained that the only two statutory exceptions authorizing a sentencing court to impose a sentence below an applicable mandatory minimum are where:  (1) the government makes a motion under 18 U.S.C. § 3553(e), based on substantial assistance; and (2) the "safety valve" factors are satisfied under 18 U.S.C. § 3553(f).  Neither of those circumstances were present in those cases, which were consolidated on appeal.  <u>Reevey</u>, 631 F.3d at 111-13.  Defendant's case also does not involve either of those exceptions.

[5] The quantities of cocaine base to which the consolidated <u>Reevey</u> defendants pleaded guilty were 10.8 grams and 5 grams or more, respectively.  Those quantities subjected defendants to the then-mandatory minimum of 5 years under 21 U.S.C. 841(b)(1)(B), but would not trigger any mandatory minimum under the statutory amendments enacted in the FSA.  <u>Reevey</u>, 631 F.3d at 111, 114.  Here, if defendant were to obtain the benefit of the FSA, his mandatory minimum would be reduced from 10 years to 5 years, and he would also get the benefit of the reduced guideline offense levels enacted pursuant to the FSA.

authorize them to be resentenced under its provisions.  The Court of Appeals held that the FSA is not retroactive to defendants sentenced before its date of enactment, relying on the Savings Statute, 1 U.S.C. § 109.  Id. at 114-15.

The Reevey Court observed that at the time of that decision, every other Court of Appeals that had addressed the issue had ruled consistently with its conclusion.  Id. at 115.  Our Court of Appeals reiterated the same rule in United States v. Turlington, 696 F.3d 425, 428 (3d Cir. 2012).[6]  Indeed, currently all other circuit decisions have likewise held that persons sentenced under 21 U.S.C. § 841 for cocaine base offenses pre-FSA cannot benefit from the revision to the mandatory minimum penalties contained in that Act.  See, e.g., United States v. Blewett, 746 F.3d 647, 652 (6th Cir. 2013) (en banc) (collecting cases), cert. denied, 134 S.Ct. 1779 (2014).[7]

This rule has been applied universally, whether the issue was presented on direct appeal, as in Reevey, 631 F.3d at 111; or on a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2), as in Blewett, 746 F.3d at 649, 656-58; or based upon constitutional

_____

[6] Turlington discussed the Supreme Court decision in Dorsey v. United States, 132 S.Ct. 2321 (2012), which held that the FSA is retroactive to those defendants who were convicted of crack cocaine offenses pre-FSA, but who were sentenced post-FSA.  It stated that Dorsey "does not address, or disturb, the basic principle that the FSA does not apply to those defendants who were both convicted and sentenced prior to the effective date of the FSA."  Turlington, 696 F.3d at 428 (citing Reevey, 631 F.3d at 115).

[7] Defendant, in briefing his current motion, cited the Sixth Circuit panel decision in Blewett, 719 F.3d 482 (6th Cir. 2013).  (Dkt. 46 at 1-4.)  However, that decision was vacated and rehearing en banc was granted on July 11, 2013.  The en banc decision, discussed in the text supra, is now the controlling ruling in that circuit.

challenges under the Fifth Amendment Equal Protection Clause or the Eighth Amendment prohibition of cruel and unusual punishment.  Id. at 658-60; see also United States v. Augustine, 712 F.3d 1290, 1291-96 (9th Cir. 2013) (same ruling, on motion for reduction of sentence under 18 U.S.C. § 3582(c)(2)); United States v. Surratt, 453 Fed.Appx. 202, 203-04 (3d Cir. 2011) (same; motion under 18 U.S.C. § 3582(c)).  The same ruling has also been applied to a motion under 28 U.S.C. § 2255 at the District Court level.  Ford v. United States, No. 11–2761, 2012 WL 2798532, at *13 (M.D. Fla. July 9, 2012) ("Mr. Ford committed his crime and was sentenced before the Fair Sentencing Act took effect....  Accordingly, Mr. Ford's claim of ineffective assistance of counsel based on the Fair Sentencing Act is without merit.")

Defendant asserts, however, that his plea agreement entitles him to be resentenced based upon the lower 5-year mandatory minimum that a post-FSA sentencing would afford him.  This claim is equally without merit, for at least three reasons.

First, based upon Reevey and all consistent circuit authority, this Court lacks legal authority to sentence below the mandatory minimum in effect when defendant was sentenced, because the FSA cannot be applied retroactively to his case.  See discussion supra.

Second, if defendant chose to assert such a claim, he would have had to assert it in a motion under 28 U.S.C. § 2255 ("a Section 2255 motion"), because his time to have appealed his conviction had expired when the FSA was enacted.  Also, as we have seen,

7

18 U.S.C. § 3582(c)(2) does not apply.  Surratt, 453 Fed.Appx. at 203-04.  A Section 2255

motion is subject to a one-year limitations period.  28 U.S.C. § 2255(f).  That period is

measured from the date on which the judgment became final, or other measuring dates not

here relevant.  Id.  Defendant's conviction, which was not appealed, became final 14 days

after May 28, 2010, when the judgment was entered.  See Fed.R.App.P. 4(b)(1)(A)(i) (eff.

Dec. 1, 2010).  The current motion, postmarked January 14, 2013, was filed on January

25, 2013.  (Dkt. 42 at 1, 9.)  Thus, even giving defendant the benefit of the "mailbox

rule,"[8] the motion was filed more than one year beyond the one-year limitations period for

a Section 2255 motion, and there is no indication of grounds for equitable tolling in the

record.  See generally Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-19 & n.1 (3d

Cir. 1998).  Meanwhile, the FSA had been enacted approximately two months after

defendant's conviction became final.  Therefore, it would have been futile for this Court

to have proposed to defendant to recharacterize this motion as a Section 2255 motion.

See United States v. Miller, 197 F.3d 644 (3d Cir. 1999).

     Third, assuming arguendo that defendant's motion for specific performance of his

plea agreement was procedurally correct as a miscellaneous motion or petition, filed on

the docket of this closed criminal case, it is substantively without merit.  The plea

agreement did not provide that the government agreed to obtain retroactivity for

defendant in a resentencing if the crack cocaine mandatory minimums were later amended

_____

[8] Cf., Fed.R.App.P. 4(c)(1).

by statute.  On the contrary, the agreement stated in pertinent part that, "in the event that the ... mandatory minimum sentencing provisions of Title 21, United States Code, Section 841(b)(1)(A) that apply to cocaine base (crack cocaine) distribution offenses are amended subsequent to the entry of this plea agreement, the defendant reserves the right to petition the District Court for a re-sentencing hearing.  The government reserves the right to take whatever position it deems appropriate in response to any such petition filed with the Court...."  (Dkt. 28 at 6.)

Plea agreements are contractual in nature, so our courts apply contract law to determine whether a plea agreement has been breached.  See United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998).  The government must strictly comply with the terms of plea agreements.  Id.  However, "[i]n determining whether the plea agreement has been breached, courts must determine 'whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty.'"  Id. (quoting United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992)).

This stipulation in the plea agreement, as reasonably read, did not require retroactivity for defendant if the crack cocaine sentencing statute were subsequently amended to reduce the mandatory minimums.  Rather, it permitted the government to take "whatever position it deems appropriate in response to any such petition."  (Dkt. 28 at 6.)  Here, in response to defendant's motion seeking resentencing under the later-enacted FSA, the government has taken the only correct position that it could take, once the FSA

9

was enacted and the circuit courts ruled on its lack of retroactivity to those previously sentenced.  Reevey, 631 F.3d at 111.

Defendant asserts that "as part and parcel of the agreed plea bargain, as written and as orally explained by defense counsel, the Government and the District Court, it was reasonably expected and understood by him, that, in the event ... the said amendments took place as specified in the written plea agreement ...,  that they would be deemed 'retroactively' applicable to him...." (Dkt. 42 at 5.)  Contrary to defendant's assertion, the specific discussion on the topic of retroactivity at defendant's plea hearing confirms that the government reserved the right in the plea agreement to take any legally appropriate position about resentencing, if the mandatory minimum statute for crack cocaine was later amended.  This point was carefully communicated and explained to defendant by both counsel and by this Court, and he acknowledged at the time that he understood.  The pertinent portions of that lengthy colloquy were as follows:[9]

THE COURT:        [T]hese points that are called stipulations in your plea agreement are directed at that process that I just described to you.  [Referring to the three-step sentencing process to determine the sentence under 18 U.S.C. § 3553(a), calculating the guideline range and treating the federal sentencing guidelines as advisory only, as explained by the Court to defendant in the portion of the plea hearing just before this quoted colloquy.]

Let's look at Paragraph 1 now.  It says that this office, which is Mr. Askin's office, the prosecutor, and you, Mr. Baker, recognize that the federal sentencing guidelines are not binding on the Court, which is so, right?

---

[9]  When we quote the transcript here, we correct transcription and clerical errors but make no other changes to the text, except as noted infra n.10.  None of these corrections are material.

MR. BAKER:          Uh-huh.

THE COURT:          Yes?

MR. BAKER:          Yes.

THE COURT:          And it says however, you and the Government nevertheless agree to these written stipulations set forth here and you agree that the Court should sentence you within the guidelines range that results from the total guidelines offense level that you are describing below.  And you further agree that neither side will argue for a sentence outside the guideline range that results from the agreed total guidelines offense level.  Do you see that?

MR. BAKER:          Yes.

THE COURT:          But are you agreeing to it?

MR. BAKER:          Yes.

THE COURT:          You are?

MR. BAKER:          Uh-huh.

THE COURT:          You see this Paragraph 1 here, right?  And I've just read it to you and you've already read it and discussed it with your lawyer.  Are you in fact agreeing to it, Mr. Baker?

[DEFENSE COUNSEL]:    Your Honor, he understands it better -- he agrees, Your Honor, but he understands it better in reference to the actual number that's agreed upon, and that's what I spoke to him about.

THE COURT:          Well, we have to look at each one of these paragraphs.

[DEFENSE COUNSEL]:    I agree, Your Honor.

THE COURT:          We can't just pick out one or two of these paragraphs.  And that's why I'm covering this with you all the way through.

MR. BAKER:          Yes.

11

THE COURT:          Do you follow me?  Okay.  So Paragraph 1 you're aware of it and you agree to it, right?

MR. BAKER:          Yes.
....
THE COURT:          .... So in Paragraph 3, in this paragraph you are agreeing that the one count indictment in this case ..., you are agreeing that this offense described in Count 1 did, in fact, involve more than 50 grams as a quantity and that the substance was cocaine base also known as crack cocaine.  Are you agreeing to that?

MR. BAKER:          Yes.

THE COURT:          Okay.  And at the same time the Government is agreeing that you're not going to be held responsible for more than 150 grams of crack cocaine.  Do you see that?

MR. BAKER:          Yes.

THE COURT:          Okay.  And also in Paragraph 3 you are agreeing that based upon this range of 50 to 150 grams of cocaine base, that results in a base offense level of 30 under the applicable edition of the guidelines.  Do you see that?

MR. BAKER:          Yes.

THE COURT:          Base offense level of 30.  Yes?

MR. BAKER:          Yes.

THE COURT:          And you're aware of that, right?

MR. BAKER:          Yes.

MR. BAKER:          Can I --

                         (Pause)

THE COURT:          Don't say yes unless you're confident.

MR. BAKER:          I'm confident.

12

THE COURT:          Okay.  We can show you the [guidelines] book again if you have any trouble remembering this.

MR. BAKER:          Okay.

THE COURT:          Would you like to see that?

MR. BAKER:          No, I'm okay.

THE COURT:          Okay.  All right.  And your lawyer did show you where that base offense level of 30 is connected to that quantity of crack cocaine in the guidelines book?

MR. BAKER:          Yes.

THE COURT:          Okay.  Then Paragraphs 4 and 5 are there to help you if the Government and the Court agrees at the time of sentencing that you have accepted responsibility for your own conduct.  Those would be the three points reduction for acceptance of responsibility....

MR. BAKER:          Yes.
....
THE COURT:          ....  And then in Paragraph 6 it says that the parties agree that if you do this calculation you get to an agreed total guidelines offense level of 27.  Agreed?

MR. BAKER:          Yes.

THE COURT:          Okay.  Now this is stipulation number 7 and it simply says that you, both sides, understand and agree that this offense charged against you in Count 1, the one count indictment, does subject you to a mandatory minimum sentence of ten years of imprisonment under the offense statute and its penalty provision.  You're aware of that, right?

MR. BAKER:          Yes, ma'am.

THE COURT:          And you know that that's what Congress has written into the law, right?

MR. BAKER:          Yes.

THE COURT:          At least for now.

MR. BAKER:          Uh-huh.

THE COURT:          Okay.  Your lawyer's explained that to you.

MR. BAKER:          Yes.

THE COURT:          Now in Paragraph 8 it says that you and the Government agree not to seek or argue for any upward or downward departure or any upward or downward adjustment not set forth herein.  So you won't be asking for a different calculation of the guidelines range ... in Step 1 [of the sentencing hearing, as explained previously in the plea hearing], and you wouldn't be looking for a departure in your favor at Step 2 according to this paragraph.  And you're further agreeing that a sentence within the guideline range that results from the agreed total guidelines offense level of 27 will be a reasonable sentence.  Understood?

MR. BAKER:          Yes.

THE COURT:          Okay.  You didn't mention variance in this agreement, Mr. Askin. But I don't know that it would even come up.

[DEFENSE COUNSEL]:   It wouldn't, Your Honor.

[PROSECUTOR]:  I don't believe it would come up....  And ... in future matters I'll check with my office on that in terms of variance.  But I don't think it's going to affect things in this case.

[DEFENSE COUNSEL]:   Yes, Your Honor.  Because of the mandatory minimum, variance isn't really an issue.

THE COURT:          Right.  Because the guideline range would be exactly at the mandatory minimum at its low end.  That's how the guidelines cope with mandatory minimums, right?

[PROSECUTOR]:  Yes, Your Honor.

THE COURT:          You understand that, right?

[DEFENSE COUNSEL]:   Yes, Your Honor.

14

THE COURT:          And he understands it?  That's the most important thing.

                    (Pause)

[DEFENSE COUNSEL]:   We're ready, Your Honor.

THE COURT:          All right.  [To defendant]:  Yes, sir?

MR. BAKER:          I said excuse me.

THE COURT:          Oh.  I thought you had a question for me.

MR. BAKER:          No.

THE COURT:          Okay.  We're ready to proceed?  Okay, we're almost finished going through this, but there's an important portion here that we need to still talk about.... Paragraph 9 is a basic waiver of your right to appeal and also your right to seek to challenge your conviction or your sentence by any petition or motion or writ, post-conviction.  And it's a long paragraph, but let me try to explain it to you [explanation of limited waiver of appeal and post-conviction challenge rights]....

[DEFENSE COUNSEL]:   .... I've explained to Mr. Baker that he has given up the right to appeal, only to the extent that the sentence imposed is within the agreed upon guideline range based upon the calculation of 27.  He didn't understand that clearly when Your Honor iterated that for him, Your Honor.

THE COURT:          Well, I think we need to -- I think we should get out the guidelines book and explore this a little bit, because it's possible -- I haven't looked at what [level] 27 will get you, but 27 can be overridden by the mandatory minimum.

[DEFENSE COUNSEL]:   No, he understands that.  That part he understands, as well, Your Honor.  He will not get a sentence less than the ten year mandatory minimum.  But with respect to the discrete issue with respect to appeal rights he reserved -- and he understands if he gets the ten years, you know, he can't appeal that because it's the mandatory minimum.  And Your Honor couldn't go below that.  But if he goes above 27 and it's also above the ten year mandatory minimum he can appeal.

THE COURT:          Oh, absolutely.

[DEFENSE COUNSEL]:   That's what he understands.  And that's what's been explained to him, Your Honor.

THE COURT:          Twenty-seven is not a sentence.  Twenty-seven is an offense level.

[DEFENSE COUNSEL]:    Is an offense level.  Correct, Your Honor.

THE COURT:          We get an offense level, we get a criminal history category, we look on the chart -- let's look at it now, Mr. Askin.

[PROSECUTOR]:   Yes, I concur.

THE COURT:          To get a guideline range.  So let's say hypothetically ... that in Mr. Baker's case he's at total offense level of 27, as agreed between the parties, and the Court agrees at sentencing that the total offense level is 27.  And let's say hypothetically that the Court finds a criminal history category of one....  What is the guideline range on the chart?

[DEFENSE COUNSEL]:    Seventy to 87 months.

THE COURT:          Okay....  So 70 to 87 months is the guideline range at offense level 27 and criminal history category one.  Do you see that, Mr. Baker?

MR. BAKER:          Yes.

THE COURT:          Now you could be thinking well, so best case under my plea agreement maybe I could get a sentence of 70 months because that's the bottom of the offense level 27 guideline range.

MR. BAKER:          Yes.

THE COURT:          You could be thinking that.  But that would be wrong because even under the guidelines book, elsewhere in the guidelines book -- and we'll find it for you -- the guidelines says regardless of what we have in this chart at the back, if there's a mandatory minimum set by Congress, then the guideline range ... the bottom of the guideline range comes up to that mandatory minimum.  So here, even if your guideline range was 70 to 87 months based upon offense level and criminal history, then your guideline range would become 120 months, ten years, because of the mandatory minimum.  And it wouldn't be any higher than 120 months because that would exceed the guideline range of 87 months.  And so it would just sort of flatten into that 120 months as the bottom and the top of the guideline range for you.

Now let's go out to criminal history category six, the highest criminal history category, at level 27, Mr. Bowman.... Okay. What -- so you and your client see.

....

[DEFENSE COUNSEL]:   130 months to 162 months, Your Honor.

THE COURT:   Okay. So if he were in criminal history category six, the high-end would be what?

[DEFENSE COUNSEL]:   162 months.

THE COURT:   Okay. And the bottom of it would be 130 months.

[DEFENSE COUNSEL]:   Correct.

THE COURT:   Which of course is higher than the mandatory minimum. And under his plea agreement here, he could appeal the criminal history calculation that the Court would be making if he didn't agree with being in criminal history category six.

[DEFENSE COUNSEL]:   Correct.

....

THE COURT:   [Explaining right to appeal criminal history, reserved in plea agreement.] It's not simple. So I want to make sure that you are able to follow this. But ultimately under you plea agreement you are saying that -- let's say if I'm in a criminal history category at offense level 27 that takes my guideline range above 120 months, then the Judge can sentence me within that range, 120 or above to the top of my guideline range, and that sentence would be reasonable. And you wouldn't be appealing that and you wouldn't be attacking that sentence in the future unless of course the law changes.

(Pause)

MR. BAKER:   Understood, Your Honor.

THE COURT:   So here's what you do know under your plea agreement. That if you plead guilty to ... at least 50 grams of crack cocaine involvement, then there's a mandatory minimum of ten years at this point in time under the law. You know that much, right?

MR. BAKER:   Yes.

17

THE COURT:          And under your plea agreement you reserve the right to challenge whatever criminal history category is suggested to the Court by the Government at the time of sentencing.  You reserve your full right to argue what the criminal history should be.

MR. BAKER:          Yes.

THE COURT:          And you reserve your right to appeal any criminal history determination that the sentencing Judge makes, right?

MR. BAKER:          Yes.

THE COURT:          But you are agreeing that based upon this quantity of cocaine, the total offense level in your case should be base offense level of 30, less three points for acceptance, a total offense level of 27.  Understood?

MR. BAKER:          Yes.

THE COURT:          That's why it's laid out for you here in writing.  So that you and your lawyer can spend the time that I know you have spent going over this so that we can make it as clear as possible for you.

MR. BAKER:          Uh-huh.

THE COURT:          Now as if that were not interesting enough, there's the next paragraph, Paragraph 10.  And for this, Mr. Baker, I think I'm going to ask Mr. Askin to summarize this paragraph.  Because this is something kind of new in our practice here.

[PROSECUTOR]:   Yes, Your Honor.  This is --

THE COURT:          And Mr. Askin you're summarizing it now for Mr. Baker.

[PROSECUTOR]:   I will do so, Your Honor.

THE COURT:          All right.

[PROSECUTOR]:   This is the paragraph that's been renumbered paragraph number 10 and it basically says that notwithstanding the earlier paragraphs, particularly the earlier Paragraph Number 3 which is a stipulation to quantity, in the event that the guidelines provision --

THE COURT:          And also the mandatory minimum in Paragraph 7.

18

[PROSECUTOR]:   And also the mandatory minimum in Paragraph 7.  In the event that those penalties that apply to cocaine base or crack cocaine distribution offenses are amended subsequent or after the entry of this plea agreement today, then you, Mr. Baker, reserve the right to petition this Court, Judge Cooper, for a re-sentencing hearing.  The Government then reserves the right to take whatever position it deems appropriate in response to a petition for re-sentencing that you file with the Court, but also the Government specifically reserves the right to present any evidence it has of additional quantities of cocaine and cocaine base or crack cocaine distributed by you prior to the date of the original sentencing hearing as relevant conduct....

I could tell you, Mr. Baker, just to put this on the record, there has been a lot of discussion, which Mr. Bowman [defense counsel] and I are both very familiar with, and the Court's very familiar with, of potential changes to the penalties going forward for crack cocaine offenses, and which could affect either the guidelines and/or the mandatory minimum.  But none of that is written into the law at this point, and that's all speculative at this point.  **But in the event those -- that there was some change to the law and it was determined to be, or the defendant argues, that it would be retroactive, in other words, it would apply back to him even though he had already pled guilty, then the Government wants to reserve its rights to present evidence of additional quantities under the relevant conduct provisions....**

THE COURT:      So if there were a re-sentencing hearing, you could bring forth that kind of evidence, he could argue against any such findings, and you'd have to meet a burden of preponderance of the evidence rather than beyond a reasonable doubt for those additional quantities.

[PROSECUTOR]:   Yes.  To be clear, Mr. Baker would be able to challenge the additional quantities and ask the Court not to find such additional quantities.  It's not like he's stipulating to it.  It's just that the Government is reserving their right, if there's a re-sentencing hearing, to bring that evidence forth to the Court, and the Government would have the burden of proving it by the standard announced by the Court.

THE COURT:      **And if he[10] were to petition for a re-sentencing, the Government could argue that whatever the change in the law was should not be applied**

---

[10]  The transcript says "you" at this quoted point in the dialogue.  However, we have listened to the recording of the hearing and the pronoun used by the Court was "he," which was correct in the context of the sentence.  Likewise, the transcript says "finds" as the last word of the next paragraph; the correct transcription is "files," based on the recording of the hearing.  A corrected transcript can be docketed, if necessary.

**retroactively in cases such as his.  You could have all those arguments if you thought
that there were any ... well-based arguments along those lines.**

[PROSECUTOR]:   **Right.  If we had a good faith basis for doing so, we could argue
that it was not retroactive.  And that's where it says we can take whatever position
we deem is appropriate in terms of his petition for re-sentencing if he so files.**

THE COURT:         Yes, Mr. Bowman.

[DEFENSE COUNSEL]:   **We went over that.  My position is, I think that all
defendants would welcome the opportunity to be in a position to file a petition in the
future in the event that if the law changes and the Government wants to argue
against it, but it's relatively esoteric at this time.  I mean, particularly down to the
point with respect to whether or not there'll even be a level of retroactivity.  The last
time after many, many years of anxious anticipation, if there was a modification it
was written into the law the manner by which defendants could come back before a
Court and take advantage of it.  So, you know, I don't want to say it's confusing
because it's really not confusing to me, but it is extraordinarily hypothetical.  And
when you distill it down, what it is is if the law changes favorably for Mr. Baker and
gives him an opportunity to petition to Your Honor for a lower sentence than is
presently required, particularly the mandatory minimum, or, you know, based on ...
the quantity amount and if Congress or the Courts make some change, we get to
come in and they get to argue that he shouldn't get the benefit of it.**  But like I said, at
this point it is extraordinarily hypothetical.

THE COURT:         **You made your client aware, then --**

[DEFENSE COUNSEL]:   **Oh, yeah.**

THE COURT:           **-- there's no guarantee that the law will change favorably to him.**

[DEFENSE COUNSEL]:   Well, not only is there --

THE COURT:         We don't know.

[DEFENSE COUNSEL]:   -- no guarantee, Your Honor, as I said, we hear year after year
about these prospective changes in the law, and in the 20 years or so since the guidelines
came about it happened one time.  You know, so it's just only ... a certain degree to what
you can get sort of focused on that.

THE COURT:          You speak from long experience, I know.

[DEFENSE COUNSEL]:    Long experience.

THE COURT:          **You follow that, Mr. Baker?**

MR. BAKER:          **Yes.**

THE COURT:          **But whatever opportunity you might have, you're preserving it in this agreement.  Is that your understanding?**

MR. BAKER:          **Yes.**

(Dkt. 37 at 19-38 (emphasis and bracketed material added).)

     There can be no breach of the plea agreement stipulation, fairly read, in the legal position the government has taken in response to the current motion for resentencing. The plea agreement expressly reserved the government's right to take any appropriate position if defendant so moved on the basis of a later reduction in the mandatory minimum penalties.  (Dkt. 28 at 6.)  This record is clear and unambiguous that such is the effect of the express terms of the plea agreement, as reasonably interpreted and thoroughly explained to defendant at length during his plea hearing.  (Dkt. 37 at 19-38.)

     The United States Supreme Court, when it ruled that the FSA would apply retroactively -- but only to those who had not yet been sentenced when the FSA was enacted -- addressed the very disparity in treatment that resulted from its ruling:

> We ... recognize that application of the new minimums to pre-Act offenders sentenced after August 3 [, 2010] will create a new set of disparities.  But those disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress

intends re-opening sentencing proceedings concluded prior to a new law's effective date).  We have explained how in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced....  And we have explained how, here, continued application of the old 1986 Drug Act minimums to those pre-Act offenders sentenced after August 3 would make matters worse....  We consequently conclude that this particular new disparity (between those pre-Act offenders already sentenced and those not yet sentenced as of August 3) cannot make a critical difference.

Dorsey v. United States, 132 S.Ct. 2321, 2335 (2012) (bracketed material added).

The recent Blewett en banc decision in the Sixth Circuit likewise stated, when addressing that same disparity between the retroactivity status of those who were sentenced before and after enactment of the FSA:

In holding that the courts lack authority to give the Blewetts [in similar position as defendant here] a sentence reduction, we do not mean to discount the policy arguments for granting that reduction....  Indeed, the Fair Sentencing Act, prospective though it is, dignifies much of what [defendants] are saying as a matter of legislative reform and may well be a powerful ground for seeking relief from Congress.  Yet the language of the relevant statutes (the Fair Sentencing Act, § 109 and § 3582(c)(2)) and the language of the relevant decisions ... leave us no room to grant that relief here.  Any request for a sentence reduction must be addressed to a higher tribunal (the Supreme Court) or to a different forum altogether (the Congress and the President).

Blewett, 746 F.3d at 660 (bracketed material added).

For the foregoing reasons, based upon the clear and unambiguous terms of defendant's plea agreement and the controlling precedents discussed above, this Court lacks the authority to resentence defendant below the mandatory minimum of 10 years

imprisonment, which sentence was imposed upon him prior to enactment of the Fair

Sentencing Act.  Accordingly, the motion for resentencing must be denied.

The Court will issue an appropriate Order.


    s/ Mary L. Cooper    
**MARY L. COOPER**
United States District Judge


Dated:  May 27, 2014

23